IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Darla Slagh, Ph.D., | : | |
| | : | Case No. 1:22-cv-691 |
| Plaintiff, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | Order Denying Motion to Dismiss |
| Joseph House, Inc., | : | |
| | : | |
| Defendant. | : | |

Plaintiff Darla Slagh, Ph.D., filed this suit against her former employer, Defendant Joseph House, Inc., asserting a False Claims Act retaliation claim pursuant to 31 U.S.C. § 3730(h)(1). Pending before the Court is Joseph House's Motion to Dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted. (Doc. 5.) Dr. Slagh has filed a Memorandum in Opposition, to which Joseph House filed a Reply. (Docs. 6, 7.) For the reasons that follow, the Court will **DENY** the Motion to Dismiss.

**I.      BACKGROUND**

**A.      Factual Allegations**

The facts alleged in the Complaint are taken as true for purposes of this dismissal motion. In May 2022, Dr. Slagh began employment as the clinical director of Joseph House, a company that provides services to male homeless veterans. (Doc. 1 at PageID 2.) As part of her duties, she oversaw the work of the company's mental health counselors. (*Id.*) The counselors lacked sufficient licensure to directly bill Medicaid for their services, so they operated under Dr. Slagh's direction and her license. (*Id.*) The law requires that the counselors meet weekly with Dr. Slagh in order for her to bill Medicaid for their services. (*Id.*) Dr. Slagh asserts that she uncovered three instances of fraudulent billing occurring at Joseph House. (*Id.* at PageID 3.)

1

First, Dr. Slagh asserts that counselor Jim Engelhardt billed for counseling services he did not provide. She reported to Katie Waits, the program director at Joseph House, that "she believed . . . [Engelhardt] was committing Medicaid fraud." (*Id.*) She reported that he "appeared to be billing Medicaid for sessions that never occurred and/or billing for sessions in greater intervals of time than the actual length of the sessions." (*Id.*) Waits responded that Engelhardt would not engage in Medicaid fraud, so Dr. Slagh must be incorrect or misunderstand the billing system. (*Id.*) Subsequently, Dr. Slagh reported to Waits that she had heard complaints from at least two patients who were billed for meetings with Engelhardt that did not occur. (*Id.* at PageID 4.) Waits accused one patient of lying to obtain a new counselor. (*Id.*)

In July 2022, Joseph House confirmed that Engelhardt was fraudulently billing for services he did not provide, and it terminated Engelhardt's employment. (*Id.*) On August 10, 2022, Dr. Slagh reported Engelhardt's fraudulent billing to the State of Ohio's Board of Counselors. (*Id.*) On August 21, 2022, Dr. Slagh told Alicia Patterson, the executive director at Joseph House, that she had reported concerns about Engelhardt's fraudulent billing to Waits, but Waits had done nothing in response. (*Id.*) Patterson "became agitated" and cautioned "against making such an accusation against Ms. Waits." (*Id.*)

In the second instance, Dr. Slagh asserts that she discovered that Joseph House was double-billing Medicaid for urinalysis services, perhaps inadvertently. (*Id.*) Specifically, she discovered that providers were entering urinalysis services into the billing system when the services were performed, but their supervisor, Brandon Cooper, also was billing for the urinalysis services one time monthly. (*Id.* at PageID 4–5.) Cooper told Dr. Slagh that the providers should not be billing for the urinalysis services at all. (*Id.* at PageID 5.) In August 2022, Dr. Slagh reported the issue to Patterson, the executive director, who agreed that Joseph

House had been double billing. (*Id.*) When Dr. Slagh followed up with the providers to make sure that the double-billing did not happen again, they told her that they were instructed to tell her that they had never billed for a urinalysis. (*Id.*)

In the third instance, Dr. Slagh alleges that she reported to Patterson in August 2022 that Waits, who provided counseling services in addition to her managerial duties, was not meeting with Dr. Slagh weekly as required for Joseph House to bill Medicaid for Waits's services. (*Id.*) Patterson falsely responded that Waits was attending weekly clinical meetings that satisfied the requirement and that Joseph House had a waiver exempting Waits from such meetings. (*Id.*) The weekly clinical meetings were attended by more participants than permitted under the law for clinical meetings. (*Id.*) Additionally, Joseph House never presented Dr. Slagh with a waiver. (*Id.* at PageID 5–6.)

On August 31, 2022, Joseph House terminated Dr. Slagh's employment for purportedly (1) failing to report suspicions that Engelhardt, the counselor, had been drinking on the job and (2) disclosing information about Engelhardt's fraudulent activity to other counselors at Joseph House. (*Id.* at PageID 6.) Contrary to those assertions, Dr. Slagh states that she did not suspect Engelhardt had been drinking on the job and that she did not disclose any information about Engelhardt to other counselors. (*Id.*) She alleges that Joseph House terminated her employment because she "objected to Joseph House's apparent fraudulent billing to the Ohio Department of Medicaid." (*Id.* at 7.)

**B.      Procedural Posture**

On November 23, 2022, Dr. Slagh filed this action against Joseph House asserting one claim of retaliation in violation of the False Claims Act, 31 U.S.C. § 3730(h)(1). (*Id.* at PageID 7.) Joseph House now moves to dismiss arguing that Dr. Slagh failed to plead a claim for False

3

Claims Act retaliation upon which relief can be granted. The Motion to Dismiss is ripe for adjudication.

## II.     STANDARDS GOVERNING MOTIONS TO DISMISS

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss, a complaint must comply with Federal Rule of Civil Procedure 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–678 (2009) (quoting Rule 8(a)(2)).

A complaint must include sufficient facts to state a claim that is plausible on its face and not speculative. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Mere "labels and conclusions [or] a formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. A complaint must contain "either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *DiGeronimo Aggregates, LLC v. Zemla*, 763 F.3d 506, 509 (6th Cir. 2014) (citation omitted). However, it "does not need detailed factual allegations" or "heightened fact pleading of specifics." *Twombly*, 550 U.S. at 555, 570. A district court examining the sufficiency of a complaint must accept well-pleaded facts as true, but not legal conclusions or legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678–679; *DiGeronimo Aggregates*, 763 F.3d at 509.

## III.    ANALYSIS

Defendant moves to dismiss the retaliation claim against it for failure to state a claim

4

upon which relief can be granted. The False Claims Act retaliation provision provides in relevant part as follows:

> (h) Relief from retaliatory actions.--
>
> (1) In general.--Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730. The last clause, "or other efforts to stop 1 or more violations of this subchapter[,]" was added in 2009.

"To establish a prima facie case [of False Claims Act retaliation], the plaintiff must show the following elements: (1) she was engaged in a protected activity; (2) her employer knew that she engaged in the protected activity; and (3) her employer discharged or otherwise discriminated against the employee as a result of the protected activity." *Jones-McNamara v. Holzer Health Sys.*, 630 F. App'x 394, 398 (6th Cir. 2015). "[I]nternal reports may constitute protected activity, provided such internal reports allege fraud on the government." *Id.* (internal quotation and citation omitted); *see also Mikhaeil v. Walgreens Inc.*, No. 13-14107, 2015 WL 778179, at *7 (E.D. Mich. Feb. 24, 2015) ("To be protected . . . the internal report must specifically allege fraudulent claims for federal funds and not merely address concerns about general misconduct.") (internal quotation and citation omitted).

The Joseph House contends that Dr. Slagh's allegations are insufficient. It asserts that Dr. Slagh's job duties included ensuring compliance, and therefore she had a heightened obligation to provide notice to Joseph House that she was reporting violations of the False Claims Act, not merely performing her job duties. *See United States ex rel. Seabury v. Cookeville Reg'l Med. Center Auth.*, No. 2:15-cv-00065, 2021 WL 4594784, at *8 (M.D. Tenn.

5

2021) ("[T]o adequately plead notice, a compliance employee must allege facts that, viewed in her favor, make clear that her employer had been put on notice that she was trying to stop it from violating the False Claims Act and not merely doing her job.").[1]

Dr. Slagh does not allege in the Complaint that she had any regulatory compliance or fraud detection job duties. Rather, she alleges that her job duties included "overseeing the work of mental health professionals providing mental health care to Joseph House's patients." (Doc. 1 at PageID 2.) She also alleges that, because the counselors had to bill Medicaid under her licensure, the law required her to conduct weekly supervisory meetings with the counselors. (*Id.*) Nonetheless, the Joseph House identifies administrative regulations and professional codes of conduct required for counselors that Dr. Slagh was obligated to follow. (Doc. 5 at PageID 16–18.) These regulations and codes of conduct required Dr. Slagh to report other counselors who act in an unethical manner. (*Id.*)[2] Joseph House asserts that Dr. Slagh was merely complying with these regulations and codes of conduct when she reported to her supervisors about the alleged misconduct of other counselors. It argues that, because she had this ethical duty to report misconduct, she had to do more to put Joseph House on notice that she was trying to stop a False Claims Act violation. The Court does not agree with Joseph House's position at this pleading stage.

Dr. Slagh's reports to Waits and Patterson about fraudulent billing to Medicaid, particularly those related to Englehardt's misconduct and the urinalysis services, were much more specific than simply reporting to her supervisors that a counselor engaged in an unethical manner. Her allegations are sufficient under *Jones-McNamara*, 630 F. App'x at 398, and

---

[1] Dr. Slagh argues that the *Seabury* decision is incorrect insofar as it purports to require a higher pleading standard for employees whose regular job duties include regulatory compliance. The Court need not resolve that dispute here.

[2] The regulations and codes of conduct for counselors identified by the Joseph House appear unrelated to the allegation that Dr. Slagh reported potentially inadvertent incidents of double billing for urinalysis services.

§ 3730(h)(1) to have put the Joseph House on notice that she was trying to stop fraudulent Medicaid billing, a practice in violation of the False Claims Act. Therefore, Dr. Slagh stated a plausible claim for retaliation in violation of the False Claims Act in the Complaint.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's Complaint (Doc. 5) is **DENIED**.

**IT IS SO ORDERED.**

BY THE COURT:

S/Susan J. Dlott
Susan J. Dlott
United States District Judge